UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DOMINICK J. ESGRO, JR.,

                      Plaintiff,

    v.                                       3:06-cv-0365
WILLIAM T. SERKIZ, JOHN MESKRE, and
TOWN OF VESTAL,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

       Plaintiff commenced the instant action asserting claims of false arrest, violation of his right to be free from unreasonable seizures, and negligence. This matter was tried before the Court on January 3, 2007. The following constitutes the Court's findings of fact and conclusions of law.

**I.    FACTS**

       In the early morning of March 10, 2005 (approximately 2:30 a.m.), Plaintiff Dominick Esgro was riding his bicycle from Johnson City, New York to Vestal, New York. Defendant Vestal Police Officer William Serkiz observed Plaintiff riding his bicycle on numerous occasions. Serkiz observed that Plaintiff was wearing very dark clothing, did not have reflective gear on his bicycle, and was difficult to see. In the area of African Road, Vestal, New York, Serkiz observed Plaintiff ride his bicycle against traffic, thereby violating the Vehicle and Traffic Law of New York State. Serkiz stopped Plaintiff on Old Vestal Road. Serkiz's car was positioned on the shoulder of the westbound lane of Old Vestal Road.

Plaintiff was positioned on his bicycle adjacent, and perpendicular, to the driver's side of Serkiz's car. Plaintiff was located in the roadway of the westbound lane of Old Vestal Road.

Serkiz asked Plaintiff some routine questions, including where he was coming from, where he was going, whether he had been drinking, etc. Plaintiff responded to Serkiz by "taking the Fifth," apparently referencing the Fifth Amendment to the United States Constitution. Plaintiff refused to answer Serkiz's questions. Serkiz also asked Plaintiff for identification. Although Plaintiff originally refused to produce identification, within minutes he produced a driver's license. Plaintiff told Serkizs to "write me a ticket and I will be on my way." Plaintiff then informed Serkiz that he wished to file a complaint against him. Serkiz contacted his supervisor, Defendant Vestal Police Sergeant Mestre, and advised that Plaintiff wished to file a complaint. Serkiz then returned to his car to write out traffic tickets.

Within five to ten minutes, Mestre arrived on the scene. Mestre walked over to, and briefly spoke with, Serkiz (who was still in his car writing tickets) and then spoke with Plaintiff. Seeking to determine whether Serkiz had been harassing Plaintiff, Mestre asked Plaintiff whether he had had any prior run-ins with Serkiz. Plaintiff responded that he had not. Plaintiff indicated his displeasure over having been pulled over by other members of the Vestal Police Department ("VPD") on several prior occasions.

The conversation between Mestre and Plaintiff took place in the westbound lane of Old Vestal Road, just to the South of Serkiz's car.[1] During the conversation, several westbound cars had to move into the eastbound lane to go around Mestre and Plaintiff. According to Mestre, he directed Plaintiff out of the middle of the road, but Plaintiff refused to

---

[1] Until his arrest, Plaintiff never moved from the side of Serkiz's car.

- 2 -

move. Mestre claims that, after directing Plaintiff to move from the road several times, he threatened to arrest Plaintiff for "obstruction." Serkiz, who was seated in his car with the windows up, stated that he heard Mestre direct Plaintiff to move out of the middle of the road. Plaintiff denies that he was directed to move out of the middle of the road. Plaintiff agrees, however, that Mestre stated his intention to arrest Plaintiff for "obstruction." Ultimately, Mestre directed Serkiz to arrest Plaintiff.

Serkiz handcuffed Plaintiff, frisked him, searched his backback for weapons and/or contraband, placed Plaintiff in the police car, and transported Plaintiff to the VPD. At the VPD, Plaintiff was initially chained to a rail and placed in a chair. Plaintiff failed to cooperate with efforts to fingerprint, photograph, or otherwise process him. Plaintiff was then placed in a cell. Plaintiff testified that he was informed that the judge could not be located and, therefore, the police offered to let him go on bail. Plaintiff responded that he did not want to pay bail and preferred to wait for the judge. Plaintiff was again advised that the judge was not available. The police then advised Plaintiff that he could go without paying bail. At that point, approximately 4-5 hours after his arrest, Plaintiff was released. Plaintiff ultimately pled guilty to various traffic violations. Plaintiff was never charged with any form of "obstruction."

## II.     DISCUSSION

### a.     Fourth Amendment/False Arrest

Plaintiff claims that his arrest and detention by the police was unreasonable and in violation of his right to be free from unreasonable seizures and false arrest. Defendants respond that they had probable cause to stop and arrest Plaintiff.

Police may stop an individual observed to be violating the traffic laws. Whren v. United States, 517 U.S. 806, 116 S. Ct. 1769 (1996); Holeman v. City of New London, 425

F.3d 184, 189 (2d Cir. 2005). If the police have probable cause to believe that a traffic violation has occurred, the subjective motivations of the police in effectuating the traffic stop are irrelevant. Whren,, 517 U.S. 806. Here, Plaintiff admitted that he violated the traffic laws by, among other things, failing to have a headlamp on his bicycle and cutting against traffic. The credible evidence demonstrated that Defendant Serkiz personally observed Defendant violate the traffic laws. Regardless of Serkiz's subjective motivation, he had ample objective bases upon which to stop Plaintiff for violating the traffic laws. Accordingly, Serkiz was legally authorized to stop Plaintiff. Whren, 517 U.S. 806; United States v. Scopo, 19 F.3d 777, 781-82 (2d Cir. 1994) (police may stop someone whom they have observed commit a traffic violation).

Moreover, although an extreme response, police are authorized to effectuate an arrest without a warrant for a traffic violation. See N.Y. VEH. & TRAF. LAW § 155 ("For purposes of arrest without a warrant, pursuant to article one hundred forty of the criminal procedure law, a traffic infraction shall be deemed an offense."); N.Y. CRIM. PROC. LAW § 140.10(1)(a) (an officer may arrest a person for "[a]ny offense when [the officer] has reasonable cause to believe that such person has committed such offense in [the officer's] presence"); Scopo, 19 F.3d at 781; People v. Van Buren, 4 N.Y.3d 640, 646-47 (2005) ("[A] police officer is generally authorized to arrest an individual for a petty offense, which includes a traffic violation (see Vehicle and Traffic Law § 155), when: (1) there is 'reasonable cause to believe that such person has committed such offense in [the officer's] presence' (CPL 140.10 [1] [a]); (2) '[s]uch offense was committed or believed by [the officer] to have been committed within the geographical area of such officer's employment or within one hundred yards of such geographical area' (CPL 140.10 [2] [a]); and (3) '[s]uch arrest is made in the county

which such offense was committed or believed to have been committed or in an adjoining county' (CPL 140.10 [2] [b])."); see also Atwater v Lago Vista, 532 US 318 (2001). Upon stopping Plaintiff for the traffic violation, Defendants were authorized to detain Plaintiff for a reasonable period of time. United States v. Williams, 2004 WL 1609337, at *2 (S.D.N.Y. 2004); see also United States v. Boyce, 351 F.3d 1102, 1106 (11th Cir. 2003) (The stop must not last "any longer than necessary to process the traffic violation unless there is articulable suspicion of other illegal activity."). Specifically, Sertiz was authorized to detain Plaintiff until such time as he could issue the traffic citations. United States v. Gonzalez-Lerma, 14 F.3d 1479, 1483 (10th Cir. 1994) ("An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. After completion of these activities, an officer may detain a driver for reasons unrelated to the initial traffic stop if (1) the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring, or (2) if the initial detention has become a consensual encounter.") (internal quotations, citations and alterations omitted); People v. Cortes, 86 Misc.2d 155, 158 (Supreme Court New York County 1976). The length of time between the initial stop and Plaintiff's arrest was approximately 20-30 minutes. The Court finds that, until such time as Plaintiff was handcuffed and placed into the police car, he was not detained any longer than reasonably necessary for Serkiz to complete his investigation of the traffic violations and issue the several traffic citations.[2] Accordingly, the Court finds no

---

[2] This conclusion is buttressed by the fact that Plaintiff indicated his desire to file a complaint against Serkiz for civil rights violations. Accordingly, Serkiz contacted Sergeant Mestre for assistance concerning Plaintiff's desire to file a complaint. Serkiz then returned to his vehicle whereupon he began completing the citations. Mestre arrived within five to ten minutes and promptly spoke with Plaintiff concerning his desire to file a complaint against Serkiz. Plaintiff's desire to file a complaint served to lengthen the period of time of the stop and can be considered to consent to the continued detention.

constitutional violations from the time of the initial stop through the time Plaintiff was formally arrested and handcuffed.

The next issue concerns whether Plaintiff's formal arrest and the subsequent detainment at the VPD violated Plaintiff's right to be free from unreasonable seizure. The Court finds that it did not. In Atwater v. City of Lago Vista, 532 U.S. 318 (2001), police pulled over a vehicle because the occupants were not wearing seatbelts - a misdemeanor under Texas law. The police handcuffed the driver, placed her in the police car, and incercerated her in a cell for about one hour, after which she was taken before a magistrate and released on bond. The Supreme Court found that the police's conduct in arresting and incarcerating the driver did not violate her rights as guaranteed by the Fourth Amendment. The Supreme Court held that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender. Id. at 354. In Arkansas v. Sullivan, 532 U.S. 769, 771 (2001), the Supreme Court again noted the authority of police officers to arrest for a traffic violation punishable only by a fine. In Davis v. City of New York, 373 F. Supp.2d 322 (S.D.N.Y. 2005), the plaintiffs were arrested on various charges relating to their efforts to hang a banner on a downtown Manhattan building. The plaintiffs were detained for between nineteen and twenty-two hours before being released. The Davis court concluded that the police had probable cause to arrest the plaintiffs for simple trespass. That court further concluded that, although simple trespass is only a violation, or a petty offense, police are empowered to effectuate an arrest for a violation. The Court, therefore, found no false arrest or violation of the rights protected by the Fourth Amendment. See also McDermott v.

City of New York, 2002 WL 265127 (S.D.N.Y. 2002) (arrest for violating the open container law, a violation, does not violate the Fourth Amendment).

Here, as noted, Serkiz witnessed various violations of the Vehicle and Traffic Law. Plaintiff admits these violations.[3]  Accordingly, Serkiz had probable cause, and was authorized, to arrest Plaintiff.  Based on the holdings in the above-cited cases and the proof at trial (or lack thereof), the Court finds that Plaintiff was not falsely arrested or unreasonably seized for purposes of the Fourth Amendment analysis.  The credible evidence at trial demonstrated that, after being handcuffed, Plaintiff was promptly brought to the VPD. Members of the VPD attempted to process Plaintiff, but he was uncooperative.  Plaintiff refused to provide basic information, be fingerprinted, or be photographed.  Plaintiff's lack of cooperation served to lengthen his detention.  Thereafter, Plaintiff was advised that he would be taken before a judge, but that the judge was not then available.  Plaintiff was offered the opportunity to post bail and be released.[4]  Plaintiff chose not to leave, but instead stated that wished to wait to see a judge.  Shortly thereafter, Defendants agreed to let Plaintiff go without bail.  Plaintiff left.  The entire encounter lasted approximately four to five hours.

The burden of proof in this civil matter is on Plaintiff.  It was, thus, incumbent upon him to demonstrate that his seizure was unreasonable.  The Court finds that Plaintiff failed to introduce sufficient evidence concerning the time that elapsed between his being brought to the VPD and the time he was offered to be released on bail to enable this Court to conclude that his detention was unreasonable.  As noted, Plaintiff caused certain delays because of

---

[3] As noted, Plaintiff ultimately pleaded guilty to these violations.

[4] The amount of bail demanded by the VPD (less than $100) was within Plaintiff' means as evidenced by the large quantity of cash found on his person (approximately $500.00).  Accordingly, the amount of bail did not serve to unreasonable detain Plaintiff.

his uncooperative behavior. Plaintiff further added to the time he was detained by stating that he did not wish to be released on bail, but instead wanted to remain at the VPD until he could appear before a judge. Without more specific evidence of the time between being taken to the VPD and the offer to be released on bail, the Court cannot conclude that the length of the seizure at the VPD was unreasonable. Even assuming that it was four to five hours before the VPD offered to release Plaintiff on bail, the Court finds that the length of his detention was not unreasonable.

Alternatively, based upon the Supreme Court's holding in Atwater, the Court finds that the individual officers are entitled to qualified immunity. "The doctrine of qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Ruling on the qualified-immunity defense requires a two-step inquiry. First, we must consider whether the . . . [facts] . . . show the [Defendants'] conduct violated a constitutional right. . . . [I]f violation of a right can be shown, the next, sequential step is to ask whether the right was clearly established, and, if it was, whether the evidence is such that . . . it was objectively reasonable for the defendants to believe that [they][were] acting in a fashion that did not violate a clearly established right." Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006) (internal citations, quotations, and alterations omitted).

As previously noted, the Court finds that there was no constitutional violation. Assuming there was a violation of a clearly established right, the Court finds that, based on the holding in Atwater, it was objectively reasonable for Defendants to believe that they were

not violating that right.[5] Defendants could reasonably have believed that, in light of Atwater, they would not be violating a person's right to be free from unreasonable searches and seizures by arresting and detaining a person for four hours where that person had committed a traffic offense in their presence.

### b.  Municipal Liability

Having found that there was no constitutional violation, there is no basis on which to hold the Town of Vestal liable.  Assuming there was a constitutional violation, Plaintiff offered insufficient evidence that his arrest was the result of a municipal policy or custom. Skehan v. Village of Mamaroneck, 465 F.3d 96, 108-09 (2d Cir. 2006).  Similarly, the Court finds that, under the circumstances of this case, Mestre in not a final policymaker.  See Anthony v. City of New York, 339 F.3d 129, 139-40 (2d Cir. 2003) (police sergeant who ordered that individual be arrested and taken to hospital was not a final policymaker).

### c.  Negligence

With respect to Plaintiff's negligent supervision claim, Plaintiff failed to introduce sufficient evidence that Defendant breached any duty of care to him that caused him to sustain damages.

## III.  CONCLUSION

For the foregoing reasons, Plaintiff has failed to sustain his burden of proof in making out claims of an unreasonable seizure, false imprisonment, or negligence.

---

[5] Assuming a constitutional violation and that the officers were not entitled to qualified immunity, the Court finds that Plaintiff failed to provide sufficient credible evidence of actual damages.  Accordingly, even is successful, Plaintiff would only be entitled to nominal damages of $1.00.

Accordingly, the Court finds in favor of Defendants and dismisses Plaintiff's Complaint in its entirety.

IT IS SO ORDERED.

Dated:January 23,2007

Thomas J. McAvoy
Senior, U.S. District Judge